Marquette L. Floyd, J.
Defendant moves to dismiss an information charging it with dredging on town land without a permit. Defendant is charged with violating section 201 of the Local Law of the Town of Islip for allowing and permitting the dredging of sand from the land under water in the bed of the Great South Bay in the Town of Islip without first obtaining a written permit from the Town Board of Islip. The defendant has moved to dismiss the information on three constitutional grounds. First, the section of the Islip Town Law on which the information is based is unconstitutionally vague. Second, that said section deprives the defendant of its property without due process of the law. Thirdly, that it is an unlawful exercise of the legislative power in that there is no express power by law for its enactment proscribed by State or Federal law.
It is well established that legislative enactments carry a strong presumption of constitutionality (Paterson v. University of State of N. Y., 14 N Y 2d 432; Martin v. State Liq. Auth., 43 Misc 2d 682, affd. 15 N Y 2d 707). While this presumption is rebuttable, unconstitutionality must be demonstrated beyond reasonable doubt. Every intendment is in favor of validity *139 and a party alleging' nnconstitutionality has a heavy burden, as the court will only strike down a legislative enactment as a last resort (Martin v. State Liq. Auth., supra; Matter of Van Berkel v. Power, 16 N Y 2d 37).
Section 201 of the Local Law of the Town of Islip entitled “ Permit Required” provides: “Notwithstanding any prior course of conduct or permission granted, no person shall dredge from or deposit fill on any lands or wetlands, or dredge from or deposit fill in the bed of any waters or watercourses owned publicly or privately in the Town of Islip, unless he shall first obtain a written permit therefor issued on the order of the Town Board as hereinafter provided and only while said permit remains in effect.”
The defendant contends that the standards set forth in sections 204.11 and 204.122 of the local law for determining an applicant’s entitlement to a permit are vague, thus rendering the entire ordinance unconstitutional. Section 204.11 provides that the dredging must substantially benefit the town as a necessary improvement of any waterway or land affected thereby. Section 204.122 states that the aquatic resources and wetlands within the town must be protected. Standards of guidance guiding municipal ordinances may be general if the standards are capable of reasonable application. The standard need not be specific (Trustees of Vil. of Saratoga Springs v. Saratoga Gas, Elec. Light & Power Co., 191 N. Y. 123; Matter of Old v. Town of Brighton, 173 Misc. 1079). The court feels that the standards in question are neither vague nor ambiguous and are capable of reasonable application. In any ease the defendant in the case at hand has not been affected by the imposition of any allegedly vague standards in the local law, because it ignored the ordinance and dredged without making an application for the required permit to the town.
The second constitutional objection by the defendant, that the local law deprives it of its property without due process, is also without legal basis. The fact that there is no property of the defendant involved in this proceeding forestalls this argument.
Finally, the defendant claims that neither the State nor the Federal G-overnment has given the Town of Islip the power to regulate dredging in its waters. The defendant claims that sections 400-a, 401 and subdivision 1 of section 429-b of the Conservation Law vest the State with exclusive power to regulate dredging in the waters of the State.
Subdivision 1 of section 400-a provides that the sovereign power to regulate and control the water resources of the State *140 ever since its establishment has been and' is now vested exclusively in the State of New York, except to the extent of any delegation of power to the United States. The legislative findings following section 401 of the Conservation Law refer to water resources as meaning water supply and do not relate the term to land and other material in the bed of any waterway.
The defendant also cites subdivision 3 of section 400-a which states that the maintenance of fish and wildlife is essential to the health, safety and welfare of the people as well as the economic growth and prosperity of the State. Subdivision 3 is a separate legislative finding of fact and does not relate directly to the statement that the regulation and control of water resources be an exclusive power of the State.
Subdivision 1 of section 429-b of the Conservation Law provides: “No person or local public corporation shall excavate or place fill in the navigable waters of the state or in marshes, estuaries, tidal marshes or wetlands that are adjacent to and contiguous at any point to navigable waters as defined by subdivision four of section two of the navigation law and that are inundated at mean high water level or tide, unless a permit therefor shall have first been obtained pursuant to Subdivision 3 hereof.”
Subdivision 4 of section 2 of the Navigation Law states that “ Navigable waters of the state ” shall mean all inland lakes and streams wholly included within the State and not privately owned which are navigable in fact and are not connected by navigable channels with tidewater. The Great South Bay, which is the body of water involved in the case at hand, is not an inland lake or stream, nor a marsh, estuary, tidal marsh or wetland adjacent to and contiguous at any point to an inland lake or stream. Therefore it is not navigable water which is covered by section 429-b of the Conservation Law. This conclusion is> substantiated by 1966 Opinion of the Attorney-General (1966 Opns. Atty. Gen. 16), wherein it states that the provisions of section 429-b do not apply to Nassau and Suffolk Counties.
The State granted the power to regulate dredging to the town by enacting subdivisions 15 and 18 of section 130 of the Town Law which deal with town ordinances. Subdivision 15 allows a town board to enact an ordinance,, which may require the issuance or revocation of permits1 to promote the health, safety or general welfare of the community, including the protection and preservation of town property and its inhabitants, peace and good order, the benefit of trade, and other matters related thereto, insofar as the same shall not be inconsistent with *141 existing law. Subdivision 18 states that a town vested with title to or holding a lease on lands under tidewater in any harbor, bay or creek and vested with the right of fishing may regulate the taking and manner of taking clams, oysters,, scallops and other shellfish from the lands of or from the waters over the lands of the water. Subdivision 18 goes on to state that such ordinance may provide that no dredging be done without a license or permit.
In Matter of Bernhard v. Caso (26 A D 2d 695, revd. 191 N Y 2d 192) the Court of Appeals upheld the action of the Town of Hempstead in refusing to grant the defendant a permit under its dredging ordinance. The majority opinion, written by Judge Soileppi, stated that conservation is a matter of public interest, which may be regulated by a township. It also incorporated the Appellate Division’s dissenting opinion by Judge Hopkins which said, ‘ ‘ The conservation of the waterways within the town was a legitimate concern of municipal regulation (cf. Town Law, § 81, subd. 1, par. [g]), particularly where the dredging proposed by the petitioners was designed to remove material from town-owned land and to apply it to the petitioner’s lands (Town Law, § 64, subd. [3]). Likewise the conservation and encouragement of the breeding of shellfish were legitimate concerns of the town (Town Law, § 130 subd. 18).”
Accordingly, defendant’s motion to dismiss the within information is in all respects denied.